UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
KIMBERLY BERNARD,                      :
                                       :
                      Plaintiff,       :      24cv6049 (DLC)
                                       :
          -v-                          :      OPINION AND
                                       :      ORDER
THE CITY OF NEW YORK, et al.,          :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff:
Maryanne K. Kaishian
S. Masoud Mortazavi
Callen Lowell
Kaishian & Mortazavi LLC
55 Washington Street, Suite 461
Brooklyn, New York 11201

For defendants:
Jeffrey Noll Jr.
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

    Kimberly Bernard has sued the City of New York, the Mayor,

and members of the New York City Police Department ("NYPD"),

alleging that her rights were violated when she was arrested for

trespassing on subway tracks during a protest.  The defendants

have moved for summary judgment on the ground that video

evidence decisively contradicts Bernard's description of her

arrest.  For the following reasons, the defendants' motion is
granted.

## Background

The following facts are taken from the evidence submitted
in connection with the motion for summary judgment.  Most of the
facts recited here are undisputed.  Disputes material to this
motion are noted.

At 6:00 p.m. on May 6, 2023, Bernard was among a crowd of
people gathered at the Lexington Avenue and 63rd Street subway
station to protest the death of Jordan Neely, who had been
killed in a subway car days earlier.  Bernard and other
protestors unlawfully stood on the southbound tracks of the Q
train, causing subway service to be disrupted for almost an
hour.  The NYPD's Criminal Intelligence Section ("CIS") obtained
video footage of Bernard standing on the subway tracks.

Two days later, on May 8, 2023, Bernard joined a gathering
outside the 7th Precinct to provide "jail support" for
individuals who had been arrested at a protest that day.  There,
at approximately 10:25 p.m., members of CIS who were on the
scene identified Bernard as having trespassed on subway tracks.
They provided that information to James McCarthy, the Chief of
Patrol Borough Manhattan South.  Chief McCarthy approached
Bernard, who was standing next to a brick wall, held her wrists

to escort her away from the wall, placed her hands behind her
back, and handcuffed her.  She was taken inside the precinct,
where two female officers removed the handcuffs, patted her
down, and placed her in a cell.  Some of the defendants were
either present at the time of Bernard's arrest or in the
precinct during her processing and detention.

Bernard has submitted an affidavit describing physical
abuse and injuries during her arrest.  She states that Chief
McCarthy "grabbed [her] arms," after which he "shoved" and
"pinned" her against the brick wall.  She states that this
caused "open wounds" and "lacerations and bruising of [her]
face, arm, shoulders, and knees."  She states that her "arm was
visibly bleeding throughout [her] arrest and processing."  She
states both that the "cuts to [her] arms caused permanent
visible scarring" and that "[t]he scarring was highly visible
for at least a year, although it has slowly healed over time."
She also states that Chief McCarthy put her in overly tight
handcuffs, and that throughout her arrest and subsequent
processing she repeatedly asked that her handcuffs be loosened
and those requests were all denied.  She states that the overly
tight handcuffs were "painful" and "severely injured [her]
wrists," which were "swollen for the next several days," and
that she had "tingling in [her] fingers."  She states that her

3

wrists were "in a significant amount of pain for the next several weeks."

In connection with this motion, the defendants submitted video footage from body worn cameras that depicts a different version of events. The footage begins as officers, including Chief McCarthy, gather with each other. Several of them move swiftly toward a brick building. Bernard is at the wall of that building. Chief McCarthy approaches her, escorts her away from the wall, places her hands behind her back, and handcuffs her. The video footage also shows much of Bernard's subsequent processing for over half an hour following her arrest, until approximately 11:00 p.m. Bernard is wearing a cropped halter top, so that her face, arms, upper back, and shoulders are clearly visible throughout much of this footage. She has no lacerations, bruising, or bleeding. Bernard is calm throughout the video footage, and does not do or say anything to suggest that she is in pain.

At no point in the video footage does Bernard request that the handcuffs be loosened. Her wrists are not held tightly together and her arms are relaxed. The video footage also shows the handcuffs loosely resting at the bottom of Bernard's wrists. At one point, approximately ten minutes after Chief McCarthy applied the handcuffs, Bernard casually slides both of the

4

handcuffs higher on her wrists and they immediately slide back down, clearly not overly tight.  At approximately 11:00 p.m., Bernard's handcuffs are taken off when she is given a pat-down.

Bernard's arrest was processed at 12:15 a.m. on May 9, 2023.  She was arrested on charges of criminal trespass in the third degree, obstructing governmental administration, unlawful interference with a train, and criminal tampering in the first degree.  These charges were all related to her actions of trespassing on the Q line subway tracks on May 6.  She was arraigned in the evening of May 9 solely on the charges of criminal trespass and obstruction of governmental administration, and she was then released.  The charges against her were dismissed on June 16.

After the May 6 incursion onto the subway tracks, the NYPD issued a press advisory asking for the public's assistance in locating individuals who had trespassed on the Q line subway tracks.  On May 9, after Bernard had been arraigned, the NYPD issued an update to that press advisory stating that Bernard and another individual had been "arrested and charged" in connection with the trespass.  For both Bernard and the other individual, the press advisory listed their age, home address, and four charges on which both had been arrested.  It listed the charges as "Crime of Terrorism: Tamper," "Unlawful Interference with a

Train," "Obstructing Governmental Administration," and "Criminal Trespass."  On May 10, the NYPD issued a further update that listed five other individuals that the NYPD was searching for in connection with the trespass.  The advisory listed the name, age, and address of each of the five individuals.

Bernard has sued the City of New York, Mayor Eric Adams, and the following members of the NYPD: Chief McCarthy, Commissioner Keechant Sewell, Commissioner Edward Caban, Chief of Department Jeffrey Maddrey, Chief of Patrol John Chell, Detective Jackson Dagobert, Deputy Commissioner of Operations Kaz Daughtry, and unnamed other NYPD members.  Bernard brought several claims under 42 U.S.C. § 1983, alleging that the defendants committed various violations of her constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments.[1]  She also brought claims under municipal and state

---

[1] Specifically, Bernard asserted the following § 1983 claims: a Monell claim against the City; a First Amendment claim against certain individual defendants; a claim of failure to train and supervise members of the NYPD against the City and certain individual defendants; a claim of negligent screening, hiring, and retention against the City and certain individual defendants; a claim of failure to intervene against all defendants; a claim of excessive force in violation of the Fourth and Fourteenth Amendments against Chief McCarthy and certain unnamed individual defendants; a claim of violations of fair trial rights under the Sixth and Fourteenth Amendments against certain individual defendants; and a claim of equal protection violations under the Fourteenth Amendment against all defendants.

law against all defendants.  These are a claim of excessive
force and unlawful search and seizure under New York City
Administrative Code § 8-801 et seq. and the New York
Constitution, and a claim asserting other violations of the New
York Constitution and tort violations.

This action was filed on August 8, 2024.  An amended
complaint was filed the next day.  The defendants filed an
answer on November 15.  An Order of December 20 entered a
schedule for pretrial proceedings.  In a letter of February 25,
2025, the defendants contended that video footage shows that the
plaintiff's claims cannot succeed and, in light of that, asked
that discovery be stayed while they proceed with a motion for
summary judgment.  An Order of February 28 granted that request.

The defendants moved for summary judgment on April 25.
Attached to their motion are five videos, a declaration from
Chief McCarthy, and two other exhibits.  The plaintiff filed an
opposition on June 30, which includes her affidavit and an
affidavit of Lisa Kelly, who asserts that she witnessed the
plaintiff's arrest on May 8, some photographs and videos, the
press advisory, and other documents.  The defendants filed a
reply on July 17.  On July 21, the plaintiff filed a motion to
strike portions of the reply or to file a sur-reply, contending
the defendants raised new arguments in their reply.

## Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted). "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted). "The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007) (finding no Fourth Amendment violation where videotape contradicted the plaintiff's version of events).

8

"Incontrovertible evidence relied on by the moving party, such
as a relevant videotape whose accuracy is unchallenged, should
be credited by the court . . . if it so utterly discredits the
opposing party's version that no reasonable juror could fail to
believe the version advanced by the moving party."  Zellner v.
Summerlin, 494 F.3d 344, 371 (2d Cir. 2007).

"A § 1983 plaintiff must establish that a person acting
under the color of state law deprived him of a right guaranteed
by the Constitution or the laws of the United States."  Vincent
v. Annucci, 63 F.4th 145, 151 (2d Cir. 2023).  "Personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under § 1983."  Baltas
v. Maiga, 119 F.4th 255, 269 (2d Cir. 2024) (citation omitted).

Bernard abandoned many of her claims in opposing the
motion.  She opposed summary judgment only with respect to her
§ 1983 claims of excessive force, First Amendment retaliation,
equal protection violations, and denial of her right to a fair
trial, as well as Monell claims against the City based on those
federal constitutional claims and similar alleged violations
under the New York Constitution.  As explained below, the
defendants are entitled to summary judgment on each of these
claims.

9

I.   Excessive Force

Bernard claims that Chief McCarthy forcibly grabbed and shoved her against a brick wall, causing bruises, lacerations, and swelling to her face, arms, shoulders, and knees.  She describes that her arm was visibly bleeding after her arrest. She also claims that Chief McCarthy applied handcuffs on her too tightly, causing serious pain to her wrists.

Claims of excessive force are rooted in the Fourth Amendment's prohibition against unreasonable seizures.  <u>Linton v. Zorn</u>, 135 F.4th 19, 31 (2d Cir. 2025).  The Fourth Amendment is violated if "a defendant applied excessive force in a manner that was objectively unreasonable under the circumstances."  <u>Id.</u> This inquiry requires courts to "evaluate the record from the perspective of a reasonable [person] on the scene, rather than with the 20/20 vision of hindsight," and involves "balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  <u>Id.</u> (citation omitted).  When conducting that balancing, courts consider

> (1) the nature and severity of the crime leading to
> the arrest, (2) whether the suspect posed an immediate
> threat to the safety of the officer or others, [] (3)
> whether the suspect was actively resisting arrest or
> attempting to evade arrest by flight[,] . . . [4] the
> need for the application of force, [5] the

relationship between the need and the amount of force
that was used, [6] the extent of the injury inflicted,
and [7] whether force was applied in a good faith
effort to maintain or restore discipline or
maliciously and sadistically for the very purpose of
causing harm.

Id. (citation omitted).

The Second Circuit has held that "unnecessary handcuff
tightening . . . can constitute excessive force." Ketcham v.
City of Mount Vernon, 992 F.3d 144, 150 (2d Cir. 2021).  For
such a claim to succeed, the plaintiff must "demonstrate that
the officer was made reasonably aware that the force used was
excessive." Cugini v. City of New York, 941 F.3d 604, 608 (2d
Cir. 2019).  This requires showing that "either the
unreasonableness of the force used was apparent under the
circumstances, or the plaintiff signaled her distress, verbally
or otherwise, such that a reasonable officer would have been
aware of her pain, or both." Id.

Bernard's claims of excessive force are utterly discredited
by the body camera footage submitted in connection with this
motion.  As discussed, that footage clearly shows that there was
no visible injury to her face, arms, or shoulders during more
than half an hour following her arrest.  The video footage also
shows that the handcuffs were loosely hanging at Bernard's
wrists, such that she was able to freely slide them up her
wrists, and that the handcuffs were taken off altogether around

11

11:00 p.m.  Nor did Bernard complain about the handcuffs or any
other physical problem.  As she was led away from the scene of
her arrest, she asked, "what did I do?" and made no complaint
about the manner of her arrest or the handcuffs.  Similarly,
when patted down by two female officers over the course of
approximately three minutes, she made no complaint about the
handcuffs or any other pain or physical injury.  Instead, her
demeanor was relaxed throughout the video footage.

Bernard does not challenge the authenticity of that video
footage.  She states without explanation that it does not
capture "the exact moment" when she claims that Chief McCarthy
"grabs" her, but that is not true.  The videos submitted as
Exhibit E and Exhibit F together provide a complete depiction of
Chief McCarthy approaching Bernard and escorting her away from
the brick wall.  There is no gap in the footage during which
Chief McCarthy might have used excessive force.

Bernard argues that certain frames from the video footage,
her own affidavit, and five undated photographs of her arms
contained in Exhibit 16 leave a question of fact as to whether
Chief McCarthy shoved her into a brick wall.  The frames Bernard
points to do not contain even arguable depictions of injuries
and serve only to undermine her version of events.  While they
show Chief McCarthy approaching her as she stood next to the

12

brick wall and placing his thumb and forefinger around one of
her wrists, they do not show any use of excessive force or
shoving.  The frames of Chief McCarthy and Bernard after she was
placed in handcuffs similarly provide no support for her claim
of excessive force.  Her arms are behind her back but there is
nothing to suggest she is in physical pain or injured.

The photographs in Exhibit 16 may, if scrutinized
carefully, show light scratches and a bruise on an upper arm,
but Bernard has not identified when these photographs were
taken.  The person in the photographs appears to be wearing a
garment of a different color than the one Bernard wore at the
time of her arrest.[2]  The video footage shows that Chief McCarty
did not inflict such an injury to Bernard's arm, and that
Bernard's arms did not have any visible injury following her
arrest.  Bernard has not explained that discrepancy.  She has
not argued, for example, that an injury to her arm only became
visible after her arrest.

The plaintiff has provided two affidavits, her own and one
from Lisa Kelly, which in the ordinary course would raise
questions of fact and defeat the defendants' motion for summary
judgment.  Lisa Kelly states that she saw Chief McCarthy "grab

---

[2] It is assumed that the photographs in Exhibit 16 are of
Bernard, although there is no affidavit asserting that.

[Bernard] and shove her, slamming her forcefully against the wall." The affidavit states that Chief McCarthy "injured her for no reason" but provides no description of any injury to Bernard. The question thus becomes whether a jury trial is required to resolve the claim of excessive force when the plaintiff and an eyewitness describe the arresting officer using excessive force and causing injury despite clear video evidence to the contrary. When there is no challenge to the video evidence as "doctored or altered in any way," Scott, 550 U.S. at 378, a trial is not required. Bernard does not attempt to explain why the injuries she describes suffering from the use of excessive force, including open wounds, bleeding, and overly tight handcuffs, are not visible in the videos. No reasonable jury could find that excessive force was used against Bernard.[3]

II. First Amendment Retaliation

Bernard claims that the defendants retaliated against her for exercising her First Amendment rights on May 8 by providing jail support. In particular, Bernard claims that the NYPD's public report of her arrest constituted First Amendment

---

[3] Bernard appears to have abandoned her claim of excessive force under New York City Administrative Code § 8-801 et seq. Even if she did not, that claim fails for the same reasons as her Fourth Amendment claim.

14

retaliation because it included her home address and indicated a
terrorism charge.

For a claim of First Amendment retaliation to survive a
motion for summary judgment,

> a plaintiff must proffer evidence to show that (1) he
> has a right protected by the First Amendment; (2) the
> defendant's actions were motivated or substantially
> caused by his exercise of that right; and (3) the
> defendant's actions caused him some injury.

Alberty v. Hunter, 144 F.4th 408, 419 (2d Cir. 2025) (citation

omitted).  With respect to the second element, "[s]pecific proof

of improper motivation is required in order for plaintiff to

survive summary judgment on a First Amendment retaliation

claim."  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir.

2001).  "[A] finding of probable cause will defeat a claim of

retaliatory prosecution."  Alberty, 144 F.4th at 419.  There is

only a "slim" exception to this rule "in the context of

retaliatory arrest claims when a plaintiff produces objective

evidence that he was arrested when otherwise similarly situated

individuals not engaged in the same sort of protected speech had

not been."  Id. at 419 n.4 (quoting Nieves v. Bartlett, 587 U.S.

391, 407 (2019)).

The defendants are entitled to summary judgment on

Bernard's First Amendment retaliation claim.  Bernard has

offered no evidence from which to infer that offering jail

support on May 8 caused the events of which she complains.  Her
affidavit does not describe anything that she said or did on May
8 other than simply "attending jail support."  Bernard was
arrested on May 8 because she had trespassed on the Q line
subway tracks on May 6.  The video of her doing so was probable
cause for her arrest, which bars any claim that her arrest was
retaliatory.  The NYPD's public report of Bernard's arrest
identified Bernard and another person as having been arrested
for the May 6 criminal trespass on the subway tracks, and was
followed by a request for the public's assistance in locating
five others.  The addresses of all seven persons were listed.
The reference to the crime of terrorism was clearly identified
as the May 6 interference in the City's subway system.  Bernard
has not produced any evidence from which a jury could find that
the defendants were motivated by her "attending jail support" on
May 8.

     Bernard argues that there is "circumstantial evidence" that
the NYPD's public report of her arrest was retaliatory.  She
points to a separate press release about the arrest of Daniel
Penny in connection with the death of Jordan Neely, which did
not include Penny's address.  Bernard also states that the
defendants have generally been found to "inappropriately use the
court of the public square to attack, punish, and silence

16

critics."  Even if any of this could be considered evidence of
improper motivation, it does not come close to the "[s]pecific
proof of improper motivation" that would be required for
Bernard's First Amendment retaliation claim to survive summary
judgment.  Curley, 268 F.3d at 73.

Finally, Bernard suggests that her First Amendment
retaliation claim "also constitutes a 'stigma plus' claim for
violations of procedural due process."  But Bernard did not
bring such a claim, and may not introduce it in opposition to
summary judgment.

III. Equal Protection

Bernard asserts an equal protection claim based on the
alleged violations of her First Amendment rights.  To prevail on
"a theory of Equal Protection based on the selective enforcement
of the law," a plaintiff must prove that

> (1) the [plaintiff], compared with others similarly
> situated, was selectively treated, and (2) the
> selective treatment was motivated by an intention to
> discriminate on the basis of impermissible
> considerations, such as race or religion, to punish or
> inhibit the exercise of constitutional rights, or by a
> malicious or bad faith intent to injure the person.

Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019) (citation
omitted).  Such a claim "requires proof of disparate treatment
and impermissible motivation."  Id. (citation omitted).  That

is, the plaintiff must "prove that the disparate treatment was caused by the impermissible motivation."   Id.

Bernard has abandoned any argument that her equal protection claim can survive in the absence of her First Amendment claim.  Because there is no dispute of material fact as to Bernard's First Amendment claim, her equal protection claim fails as well.

IV.  Fabricated Evidence

Bernard claims that her right to a fair trial was denied because evidence was fabricated against her.  She points to the fact that the NYPD's public report of her arrest indicated a terrorism charge, and she also claims that NYPD officers manufactured evidence of a Molotov cocktail at the May 8 protest and used it to justify crackdowns on protesters.  To succeed on a claim of denial of a fair trial based on fabrication of evidence,

> a plaintiff must establish that an (1) investigating
> official (2) fabricated information (3) that is likely
> to influence a jury's verdict, (4) forwarded that
> information to prosecutors, and (5) the plaintiff
> sufferred a deprivation of life, liberty, or property
> as a result.

Ashley v. City of New York, 992 F.3d 128, 139 (2d Cir. 2021) (citation omitted).

Bernard's defense of this claim is untethered to the record evidence concerning her arrest.  Bernard was arrested for her

entry into the subway roadbed on May 6. Whether the protestors had a Molotov cocktail on May 8 or the police fabricated that item is irrelevant to Bernard's arrest. Similarly, the press release seeking assistance from the public in locating others who had entered the roadbed on May 6 and the report of Bernard's arrest do not constitute a fabrication of evidence. Moreover, there is no evidence that any of these materials were forwarded to prosecutors.

V.    Monell Liability

Finally, Bernard asserts a Monell claim. The elements of a Monell claim are "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Friend v. Gasparino, 61 F.4th 77, 93 (2d Cir. 2023). Because Bernard has not shown that she was subjected to the deprivation of any constitutional right, the defendants are entitled to summary judgment on the Monell claim.

VI.   Motion to Strike or File Sur-Reply Brief

Bernard claims that much of the defendants' reply brief raised new arguments. The Court finds that the defendants' reply brief appropriately responded to Bernard's opposition brief, which abandoned many claims and shifted toward a set of arguments that could not have been fully anticipated based on

19

the complaint.  In any event, the relevant portions of the defendants' reply brief do not alter the decision reached here.

### Conclusion

The defendants' April 25 motion for summary judgment is granted.  Bernard's July 21 motion to strike or file a sur-reply brief is denied as moot.  The Clerk of Court shall enter judgment for the defendants and close the case.

```
Dated:    New York, New York
          August 28, 2025
```

_____
DENISE COTE
United States District Judge